J-S43040-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| T.S.K. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| D.M.K. | : | No. 717 MDA 2019 | |

Appeal from the Order Entered April 16, 2019
In the Court of Common Pleas of Fulton County Civil Division at No(s):
2015-00301

BEFORE:   GANTMAN, P.J.E., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED SEPTEMBER 23, 2019**

Appellant, T.S.K. ("Father"), appeals from the order dated April 15, 2019, and entered April 16, 2019,[1] in the Court of Common Pleas of Fulton County, finding D.M.K. ("Mother") not in contempt.  After review, we affirm the trial court's order.

---

[1] The subject order was dated April 15, 2019.  However, notice pursuant to Pa.R.C.P. 236(b) was not provided and docketed until April 16, 2019.  Our appellate rules designate the date of entry of an order as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)."  Pa.R.A.P. 108(b).  Further, our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given."  ***Frazier v. City of Philadelphia***, 557 Pa. 618, 621, 735 A.2d 113, 115 (1999).

---

*   Former Justice specially assigned to the Superior Court.

Mother and Father are the parents of a child, a daughter, A.L.K., born in May 2011 ("Child"). Pursuant to orders dated February 12, 2016, and May 12, 2016, entered February 16, 2016, and May 17, 2016, respectively, Mother was awarded sole physical and legal custody of Child, with Father to have supervised visitation through the Fulton County COPE program.[2, 3] Orders, 5/17/16 and 2/16/16. Further, under the May 12, 2016 order, Father forfeited

_____

[2] Under the February 12, 2016 order, Father was granted supervised visitation once per week. Order, 2/16/16. Under the May 12, 2016 order, Father was granted supervised visitation once per month. Order, 5/17/16.

[3] We observe that, while the court awarded Father supervised visitation, the custody statute does not provide for the award of supervised visitation. Section 5323 of the Act provides for the following types of awards:

> **(a) Types of award.—**After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:
>> (1) Shared physical custody.
>> (2) Primary physical custody.
>> (3) Partial physical custody.
>> (4) Sole physical custody.
>> (5) Supervised physical custody.
>> (6) Shared legal custody.
>> (7) Sole legal custody.

23 Pa.C.S.A. § 5323(a). "Supervised physical custody" is defined as "[c]ustodial time during which an agency or an adult designated by the court or agreed upon by the parties monitors the interaction between the child and the individual with those rights." 23 Pa.C.S. § 5322. Further, "[p]rimary physical custody" is defined as "[t]he right to assume physical custody of the child for the majority of time. *Id.* We, therefore, treat this as an award of sole legal custody and primary physical custody to Mother and supervised physical custody to Father.

any visitation with Child if incarcerated.[4]  Order, 5/17/16.  Pursuant to a subsequent order dated March 27, 2018, and entered April 5, 2018, Mother was to provide letters and drawings to Child received from Father, provided Mother deemed them appropriate.  In addition, Mother was to facilitate mail from Child to Father, should Child desire.  Order, 4/5/18.

Father filed a Petition for Contempt[5] on December 21, 2018, asserting that Mother was in violation of a September 15, 2015 Final Protection from Abuse Order which stated, in relevant part:

> No party shall be permitted to relocate the residence of the child/ren to significantly impair the ability of another person to exercise custody UNLESS every individual who has custody rights to the child/ren consents to the proposed relocation OR the Court approves the proposed relocation.  A person proposing to relocate MUST comply with the notice requirements pursuant to 23 [Pa.C.S.A.] Section 5337(c).[6]

A hearing on Father's petition was held on April 2, 2019, during which Father, who is incarcerated at SCI-Camp Hill, testified via video.[7]  Father

---

[4] Father has been incarcerated in state custody since December 2016.

[5] Father's petition was titled a Petition for Civil Contempt for Disobedience of Custody Order.

[6] The orders of May 2016 and March 2018 provided similarly.  **See** Orders, 3/27/18 and 5/12/16.

[7] At the time of the April 2, 2019 hearing, the controlling custody order was an order entered January 23, 2019, which provided similarly to the previous orders.  Under this order, Mother was granted sole physical and legal custody. Father was afforded the right to send Child written correspondence, drawings, and gifts, which Mother was to provide to Child, provided the content was

represented himself *pro se*. Mother was represented by counsel.[8] Father asserted that Mother testified at a December 21, 2018 custody hearing to relocating one year prior. Notes of Testimony ("N.T."), 4/2/19, at 5. He noted that, in contravention, Mother and her attorney had represented at a conciliation conference in March 2018, and a memorandum prepared in advance thereof, to still residing at her prior address. *Id.* at 4-6, 14. Father suggested that, instead of lying, Mother could have indicated that she resided at a secure location. He asserted, however, that he continues to have parental rights and is entitled to know where Child lives. *Id.* at 7, 14. Significantly, based upon the reported school district Child attended, Father admitted that he was aware at the time that Mother had in fact relocated. *Id.* at 12. While Father testified to mail sent to Child at Mother's previous address, where the maternal grandmother still resides, being returned, he conceded that he sends at least one letter per week and that only two or three have been returned. *Id.* at 7, 10. Moreover, despite his testimony that he therefore needs to send correspondence two weeks in advance to ensure Child receives it timely, Father admitted to sending correspondence several weeks in advance even prior. *Id.* at 7, 11.

_____

appropriate. Further, Mother was to facilitate mail from Child to Father, should Child desire to write to Father. *See* Order 1/23/19. This order likewise provided similarly to the prior orders as to notification of relocation. *Id.*

[8] It is unclear from the record if Mother was present at this proceeding.

By order dated April 15, 2019, and entered April 16, 2019, the trial court denied Father's petition and found Mother not in contempt. Thereafter, on April 24, 2019, Father filed a timely *pro se* notice of appeal. Father failed to file a concurrent concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and was ordered to do so by this Court by order of June 3, 2019.[9] *Per Curiam* Order, 6/3/19. Father complied and filed a concise statement of errors on May 30, 2019.[10]

On appeal, Father raises the following issue for our review:

---

[9] Notably, pursuant to order dated May 10, 2019, the trial court indicated that the clarification of a concise statement of errors was not necessary. The court further stated that it relied on its analysis provided in its April 15, 2019 order. Order, 5/10/19. Subsequent to Father's filing of his concise statement, on May 31, 2019, the trial court issued an opinion indicating that it had reviewed Father's concise statement and that its order of April 15, 2019 provided adequate analysis, which the court then proceeded to summarize. Opinion, 5/31/19.

[10] While Father violated Pa.R.A.P. 1925(a)(2)(i) by failing to file a concise statement of errors complained of on appeal concurrently with his notice of appeal, as Father filed a statement in compliance with this Court's order and there is no assertion of any prejudice, we do not quash or dismiss his appeal. **See In re K.T.E.L.**, 983 A.2d 745, 747 (Pa.Super. 2009) (holding that failure to file a Rule 1925(b) statement concurrently with a children's fast track appeal is considered a defective notice of appeal, to be disposed of on a case-by-case basis, but did not result in dismissal or quashal where there was no prejudice to the other parties as a result of the late filing); **cf. Mudge v. Mudge**, 6 A.3d 1031 (Pa.Super. 2011) and **J.M.R. v. J.M.**, 1 A.3d 902 (Pa. Super. 2010) (failure to file a Rule 1925(b) statement, when ordered by the Superior Court, will result in a waiver of all issues on appeal); **J.P. v. S.P.**, 991 A.2d 904 (Pa.Super. 2010) (finding that the appellant waived issues for appeal by failing to comply with the trial court's order directing her to file a Rule 1925(b) statement within 21 days).

1) Was the Fulton County Court of Common Pleas in error when it stated that [Mother's] change of residents [sic] did not impair [Father's] custodial rights?

Father's Brief at 4.

Prior to addressing the merits of Father's claim on appeal, we first address Mother's assertion raised in her brief that Father has waived all issues on appeal as the issues raised in Father's concise statement were not raised or preserved below and "do not indicate any appealable issues as it relates to Mother being in contempt of a court order related to the relocation statute which is what he argues, *inter alia*, in his brief." Mother's Brief at 12 (emphasis in original). Mother further raises deficiencies in Father's brief as to the lack of reference to the record and enumeration of sections as required by the Rules of Appellate Procedure. *Id.* at 13-14.

Pennsylvania Rule of Appellate Procedure 302(a) provides for the waiver of issues not first raised in the lower court ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")

Further, pursuant to Pennsylvania Rule of Appellate Procedure 2111:

**(a) General rule.--**The brief of the appellant, except as otherwise prescribed by these rules, shall consist of the following matters, separately and distinctly entitled and in the following order:

(1) Statement of jurisdiction.
(2) Order or other determination in question.
(3) Statement of both the scope of review and the standard of review.
(4) Statement of the questions involved.
(5) Statement of the case.
(6) Summary of argument.

(7) Statement of the reasons to allow an appeal to challenge the discretionary aspects of a sentence, if applicable.

(8) Argument for appellant.

(9) A short conclusion stating the precise relief sought.

(10) The opinions and pleadings specified in Subdivisions (b) and (c) of this rule.

(11) In the Superior Court, a copy of the statement of errors complained of on appeal, filed with the trial court pursuant to Rule 1925(b), or an averment that no order requiring a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) was entered.

**(b) Opinions below.--**There shall be appended to the brief a copy of any opinions delivered by any court or other government unit below relating to the order or other determination under review, if pertinent to the questions involved. If an opinion has been reported, that fact and the appropriate citation shall also be set forth.

**(c) Pleadings.--**When pursuant to Rule 2151(c) (original hearing cases) the parties are not required to reproduce the record, and the questions presented involve an issue raised by the pleadings, a copy of the relevant pleadings in the case shall be appended to the brief.

**(d) Brief of the Appellant.--**In the Superior Court, there shall be appended to the brief of the appellant a copy of the statement of errors complained of on appeal, filed with the trial court pursuant to Pa.R.A.P. 1925(b). If the trial court has not entered an order directing the filing of such a statement, the brief shall contain an averment that no order to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) was entered by the trial court.[11]

Pa.R.A.P. 2111 (footnote added).

---

[11] As indicated above, in children's fast track matters, such as this matter, a concise statement of errors complained of on appeal is required to be submitted with the notice of appeal. Pa.R.A.P. 1925(a)(2)(i).

Rules 2114 through 2119 establish and set forth in detail the specifics

as to each of the required sections of the brief. ***See*** Pa.R.A.P. 2114-2119. As

to the argument section of a brief, Rule 2119 provides as follows:

> **Rule 2119. Argument.**
>
> **(a)** ***General rule.***—The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.
>
> **(b)** ***Citations of authorities.***—Citations of authorities in briefs shall be in accordance with Pa.R.A.P. 126 governing citations of authorities.
>
> **(c)** ***Reference to record.***—If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears (*see* Pa.R.A.P. 2132).
>
> **(d)** ***Synopsis of evidence.***—When the finding of, or the refusal to find, a fact is argued, the argument must contain a synopsis of all the evidence on the point, with a reference to the place in the record where the evidence may be found.
>
> **(e)** ***Statement of place of raising or preservation of issues.***—Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross-reference to the page or pages of the statement of the case which set forth the information relating thereto as required by Pa.R.A.P. 2117(c), or substantially the same information.

Pa.R.A.P. 2114.

Rule 2101 provides as follows with regard to non-compliance:

> Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they

may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.

Pa.R.A.P. 2101.

We have held that an appeal may be dismissed and/or quashed where the deficiencies of the appellant's brief are such that we are unable to conduct a meaningful review. *Karn v. Quick & Reilly, Inc.*, 912 A.2d 329, 337 (Pa.Super. 2006); *Branch Banking & Trust v. Gesiorski*, 904 A.2d 939, 943 (Pa.Super. 2006); *Commonwealth v. Maris*, 629 A.2d 1014, 1017 (Pa.Super. 1993). Of particular importance, an appellant must include a statement of questions involved. *Branch Banking & Trust*, 904 A.2d at 942; *Maris*, 629 A.2d at 1016. As we indicated in *Maris*:

> "This Court possesses discretionary authority to quash, dismiss or deny allowance of appeal based upon the substantial defects of appellant's brief. Pa.R.A.P. 2101." *Commonwealth v. Ely*, 381 Pa.Super. 510, 513, 554 A.2d 118, 119 (1989). . . . "We decline to become appellant's counsel. When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review a Court will not consider the merits thereof." *Sanford*, supra, 299 Pa.Super. at 67, 445 A.2d at 150. . . .

*Maris*, 629 A.2d at 1017.

Moreover, we cannot accord special relief to an appellant merely because of his or her *pro se* status. *See id.* As stated in *Commonwealth v. Rivera*, 685 A.2d 1011, 1013 (Pa.Super. 1996) (quoting *O'Neill v. Checker Motors Corp.*, 567 A.2d 680, 682 (Pa.Super. 1989)):

> While this court is willing to liberally construe materials filed by a *pro se* litigant, we note that appellant is not entitled to any

- 9 -

particular advantage because she lacks legal training. As our [S]upreme [C]ourt has explained, any layperson choosing to represent [herself] in a legal proceeding must, to some reasonable extent, assume the risk that [her] lack of expertise and legal training will prove [her] undoing.

In the case *sub judice*, we decline to find that Father failed to raise appealable issues or that he raised issues that were not preserved below. Further, despite some deficiencies in his brief, in particular with regard to specific reference to the record in the court below, we decline to dismiss Father's appeal, as we do not find that such deficiencies hamper meaningful review.

Turning to the merits of Father's appeal, our standard of review is as follows:

> When we review a trial court's finding of contempt, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt. This Court also has stated that each court is the exclusive judge of contempts against its process.

*G.A. v. D.L.*, 72 A.3d 264, 269 (Pa.Super. 2013) (internal citation and quotations omitted). We previously determined:

> A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment. A party must have violated a court order to be found in civil contempt. The complaining party has the burden of proving by a preponderance of evidence that a party violated a court order.

*Garr v. Peters*, 773 A.2d 183, 189 (Pa.Super. 2001) (internal citation omitted).

As to relocation and notice, 23 Pa.C.S.A. Section 5337(c)(1) provides, in relevant part, "The party proposing the relocation shall notify every other individual who has custody rights to the child." 23 Pa.C.S.A. Section 5322 defines "relocation" as "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights."

Further, Pennsylvania Rule of Civil Procedure 1915.17 states, in relevant part, "A party proposing to change the residence of a child which significantly impairs the ability of a non-relocating party to exercise custodial rights must notify every other person who has custodial rights to the child. . . ."

In finding Mother not in contempt, the trial court reasoned as follows:

**a. [Mother] is not in contempt of the September 15, 2015 Final PFA Order.**

The Contempt Petition alleges a violation of the relocation provision of the Final Protection From Abuse Order entered on September 15, 2015. [Father] argues that "[t]he defendant failed to follow the Rules of Civil Procedure Rule 1915.17 Relocation. Notice and Counter-Affidavit in this matter. Wherefore violating the rights of [Father] in this matter." At the April 2, 2019 hearing, [Father] testified that [Mother] moved her residence prior to the custody conciliation which took place in March of 2018, and that [Mother] confirmed that she had moved with the child at the custody trial which took place on December 21, 2018. The [c]ourt finds that there can be no violation of the September 15, 2015 Final PFA Order, which expired on March 15, 2017, for events that occurred after its expiration.

The [c]ourt notes that the Order of Court which was in effect prior to conciliation, dated May 12, 2016, and the Order of Court which went into effect following conciliation, dated March 27, 2018, both contain relocation language nearly identical to the provision on which [Father] relies. Both Orders provide that "[n]o party shall be permitted to relocate the residence of the child to

- 11 -

*significantly impair* the ability of another person to exercise custody," unless the non-relocating party consents or the [c]ourt approves the relocation, and state that the party proposing to relocate must comply with the notice requirements pursuant to 23 [Pa.C.S.A.] Section 5337(c). ([e]mphasis added). Therefore, the [c]ourt will address whether these relocation provisions, which were in effect at the time of [Mother]'s alleged violations, were violated.

**b. [Mother] is not in contempt of the subsequent Orders of Court and has not violated the statutory requirements regarding relocation.**

Not every change in the residence of a child is deemed to be a "relocation" which triggers [Pa.R.C.P. ]1915.17 and 23 [Pa.C.S.A.] § 5337. Pennsylvania Rule of Civil Procedure 1915.17 clearly provides that "a party proposing to change the residence of a child which *significantly impairs* the ability of a non-relocating party to exercise custodial rights must notify every other person who has custodial rights to the child." [Pa.R.C.P. ]1915.17(a) (emphasis added). Although [23 Pa.C.S.A.] § 5337 applies to "any proposed relocation," [23 Pa.C.S.A.] § 5322 narrowly defines "relocation" as "a change in a residence of the child which *significantly impairs* the ability of a nonrelocating party to exercise custodial rights." ([e]mphasis added). Unless there is a *significant impairment* of the nonrelocating parent's custodial rights, there is no violation of [Pa.R.C.P. ]1915.17, [23 Pa.C.S.A.] § 5337, or the relevant Orders of Court.

Although [Mother] and the child had a change in residence, their move does not constitute a "relocation" because it does not "significantly impair" [Father]'s ability to exercise custodial rights. "[W]hile relocation is in part defined by a change in residence of the child, it is evident that a relocation as contemplated in the statute requires a negative custodial impact on a nonrelocating party." [**D.K. v. S.P.K.**, 102 A.3d 467, 472 (Pa.Super. 2014)]. The Superior Court has explained that:

> "[S]ection 5337 is designed to give notice to a party with custody rights that the other custodial party intends to change his or her geographical location and a modification of a custody arrangement will be necessary to allow the relocating party to continue to exercise custody rights. Section 5337(c) obviously envisions a change in the relocating party's geographical location that will impact custody..."

[*Id.* at]102, 473.

In the present case, there no significant impairment of [Father]'s limited rights. The change in residence does not impact legal custody of the child, as [Mother] obtained sole legal custody by Order of Court dated February 12, 2016, and has maintained sole legal custody since that time. The change in residence does not negatively impact physical custody because [Father] is not afforded visitation with the child. The Order of Court entered on May 12, 2016 provided that if [Father] was "incarcerated following entry of this order, he forfeits any and all visitations with the child." [Father] has not been entitled to supervised visitation since approximately December of 2016, when he was incarcerated. Furthermore, this is not a case where the nonrelocating parent "has had regular and continued involvement co-parenting in different aspects of the minor child's life that go beyond his periods of partial physical custody." [*C.M.K. v. K.E.M.*, 45 A.3d 417, 426 (Pa.Super. 2012)]. Due to [Father]'s incarceration at a State Correctional Institution and the nature of his crimes, he is not permitted to be actively involved with the child's activities, education, or care. There is no evidence that the relocation has broken the "continuity and frequency" of [Father]'s involvement with the child or that it "threatens significant impairment of [Father]'s ability to exercise his custodial rights." [*Id.*]

Nor has there been a "significant impact" on the contact which [Father] is permitted to have with the child. Pursuant to the Order of Court entered on March 27, 2018, [Father] may send letters and drawings to the child. [Father] continues to frequently mail letters and drawings for the child to [Mother]'s former address, where [Mother]'s mother still resides. [Father] testified that he feels that he must send mail weeks in advance, in order to ensure that it is received by the child at the intended time. However, this was a practice which [Father] adopted before the child moved to her new residence. A few letters and drawings have been returned to [Father], but this may be attributed to difficulties with the prison mail system. The [c]ourt has no reason to believe that [Mother] is not providing the child with the letters and drawings which she deems appropriate. While the [c]ourt notes [Father]'s annoyance, these facts do not suggest a "significant impairment" of his correspondence with the child.

. . .

- 13 -

It is clear that the child's change in residence does not constitute a "relocation," as there has been no significant impairment [Father]'s custodial rights. The requirements set forth in Pa.R.C.P. [] 1915.17 and 23 Pa.[]C.S.A. § 5337 were, therefore, not triggered, and [Mother] did not violate the relocation provisions set forth in the May 12, 2016 or March 27, 2018 Orders of Court.

**c. Defendant is not in contempt for failing to provide her address to Plaintiff.**

The Contempt Petition also notes that [Father] has not been provided with [Mother]'s address. However, this information is protected pursuant to 23 Pa.C.S.A. § 5336(b).

Order, 4/16/19, at 1-5 (footnotes omitted); *see also* Opinion, 5/31/19, at 1-3 (unpaginated).

Father, however, argues that Mother relocated without notice which "significantly impaired [his] ability to maintain a meaningful relationship with [Child]." Father's Brief at 10. He continues, "In fact, the move cut off all forms of contact not only with [Father] but the said child's family, to include her haft [sic] sister and haft [sic] brother on [Father]'s side. The crimes to which [Father] is charged do not involve his daughter. The [] Department of Corrections has no policy on denying parental rights to sex offenders. . . ." *Id.*

Upon review, we disagree. For the reasons stated by the trial court included and set forth above, we discern no abuse of discretion with the trial court's determination that Mother was not in contempt and affirm the order of the trial court.

Order affirmed.

- 14 -

Judge Dubow joins the memorandum.

P.J.E. Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/23/2019